Filed 8/2/21  P. v. Medina CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B306086 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA089772) |
| v. | |
| OSCAR MEDINA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory A. Dohi, Judge.  Affirmed.

Helen Hoeffel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, William H. Shin and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

A jury convicted Oscar Medina of second degree robbery and assault with a firearm on January 24, 2020 based on an incident involving two victims on December 30, 2018.  On appeal, Medina's only argument is that the trial court violated his federal and state due process rights when it instructed the jury with CALCRIM No. 315 that it could consider an eyewitness's level of certainty in evaluating the reliability of the witness's identification of the defendant.

When Medina filed his opening brief here, *People v. Lemcke* (2021) 11 Cal.5th 644 (*Lemcke*), in which our Supreme Court was considering the same contention in the context of another defendant's case, had not yet been decided.  Medina explained in his opening brief that he had "raise[d] this challenge to preserve it should the Supreme Court . . . agree that certainty should not be a factor in evaluating eyewitness identification evidence and that such instruction is error and violates a defendant's due process rights."  The Supreme Court issued its opinion in *Lemcke* on May 27, 2021, rejecting the contentions Medina makes here.  Based on *Lemcke*, we will affirm the trial court's judgment.

## BACKGROUND

Just after 1:00 a.m. on December 30, 2018, an individual that the victims identified as Medina confronted Marco Delgado and Maria Franco as they walked to Franco's car.  Delgado and Franco testified that Medina ran toward them and with a weapon in his hand, which Delgado and Franco believed to be a pistol, repeatedly demanded Franco's purse.  Delgado and Franco each testified that Medina threatened to shoot if Franco didn't surrender her purse.  (Delgado estimated that Medina was 10 to 11 feet from the pair when he demanded Franco's purse; Franco estimated he was six to seven feet away.)  Franco gave the

2

assailant her wallet and he approached the pair and took the wallet from her hand.  As he fled, the pair memorized the license plate of the car the assailant drove away from the scene.  Delgado wrote down the license plate number as the pair drove to the police station after the incident.  The license plate number corresponded to a vehicle Medina rented on December 26, 2018 and was scheduled to return on December 31, 2018.

Delgado and Franco each testified that they saw the assailant clearly.  They each identified Medina as their assailant, both from a photographic lineup the day after the attack and in open court during Medina's trial.  Delgado and Franco each testified that they were certain that the person they identified— Medina—was the person who had robbed them.

The People charged Medina by information with second degree robbery against Franco (Pen. Code, § 211),[1] assault with a firearm against Medina (§ 245, subd. (a)(2)), and possession of a firearm by a felon (§ 29800, subd. (a)(1)).  The information alleged that Medina had personally used a firearm in the commission of the robbery and assault counts.  It also alleged that he had been convicted of two or more serious or violent felonies under sections 667, subdivision (d) and 1170.12, subdivision (b) both for purposes of the "Three Strikes" law (§§ 667, subds. (b)-(j), 1170.12) and for purposes of the five-year prior serious felony enhancement under section 667, subdivision (a)(1).

At trial, in addition to the factual testimony from Delgado and Franco, the jury heard from Dr. Mitchell Eisen, who testified as a defense expert witness about the "current state of the science" regarding the accuracy of eyewitness identifications.  Dr.

_____

[1] Further unspecified statutory references are to the Penal Code.

3

Eisen testified about false identifications and some of their causes, how the memory processes information, and how the way information is presented can promote responses in one direction or another. He also testified about the characteristics of what he termed a "strong recognition experience," and how in that kind of circumstance, "choosing tends to happen quickly and with a high degree of confidence." Even in that circumstance, Dr. Eisen explained, there are other factors that may reduce the reliability of what appeared to be a "strong recognition experience." Dr. Eisen's comprehensive testimony explored a variety of factors that might affect reliability of eyewitness identification testimony. He also testified in depth about how eyewitness confidence develops in one direction or another and the relationship between witness confidence in an identification and the accuracy of the identification.

Among other instructions, the trial court instructed the jury with the following instruction taken from CALCRIM No. 315: "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. [¶] In evaluating identification testimony, consider the following questions: [¶] Did the witness know or have contact with the defendant before the event? [¶] How well could the witness see the perpetrator? [¶] What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, and duration of observation? [¶] How closely was the witness paying attention? [¶] Was the witness under stress when he or she made the observation? [¶] Did the witness give a description and how does that description compare to the defendant? [¶] How much time passed between the event

4

and the time when the witness identified the defendant? [¶] Was the witness asked to pick the perpetrator out of a group? [¶] Did the witness ever fail to identify the defendant? [¶] Did the witness ever change his or her mind about the identification? [¶] How certain was the witness when he or she made an identification? [¶] Are the witness and the defendant of different races? [¶] Was the witness able to identify the defendant in a photographic or physical lineup? [¶] Were there any other circumstances affecting the witness's ability to make an accurate identification? [¶] The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty." Medina did not object. The trial court also gave a variety of other standard jury instructions, including instructions regarding reasonable doubt (CALCRIM No. 220), direct and circumstantial evidence (CALCRIM No. 223), sufficiency of circumstantial evidence (CALCRIM No. 224), factors to consider when determining witness credibility (CALCRIM No. 226), and expert witness testimony (CALCRIM No. 332).

The jury found Medina guilty of second degree robbery and assault with a firearm, but deadlocked on the felon in possession of a firearm count. The jury also deadlocked on the allegation that Medina had personally used a firearm in the commission of the second degree robbery and assault with a firearm counts. After a bifurcated trial on Medina's priors, the jury found true the allegations that Medina had suffered two prior convictions for serious or violent felonies.

The trial court granted Medina's motion to strike under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and

struck one of Medina's prior convictions for purposes of the Three Strikes law. The court sentenced Medina to the high term of five years on the robbery count, doubled to 10 years under the Three Strikes law. The trial court further imposed an additional term of five years for each of the priors under section 667, subdivision (a). The trial court imposed the middle term of one year (doubled to two under the Three Strikes law) for the assault with a firearm count. In all, the trial court sentenced Medina to 22 years in state prison.

Medina filed a timely notice of appeal.

## DISCUSSION

In October 2018, the Supreme Court granted review in *Lemcke* to determine whether " 'instructing a jury with CALCRIM No. 315, which directs the jury to consider an eyewitness's level of certainty when evaluating an identification, violate[s] a defendant's federal and state due process rights[.]' " (*Lemcke*, *supra*, 11 Cal.5th at p. ___.) In his opening brief here, Medina explains that he "raise[d] this challenge to preserve it should the Supreme Court . . . agree that certainty should not be a factor in evaluating eyewitness identification evidence and that such instruction is error and violates a defendant's due process rights."

Medina raised the same arguments here that our Supreme Court considered in *Lemcke*. The Supreme Court issued its opinion in *Lemcke* on May 27, 2021, rejecting the same arguments Medina makes here. We must follow *Lemcke*.

In *Lemcke*, the Supreme Court explained that the defendant in that case had not challenged the procedures officers used to conduct photographic lineups or the admission of any identification evidence. "Instead, his sole claim is that the trial

6

court violated his right to due process by listing the witness's level of certainty as one of 15 factors the jury should consider when evaluating eyewitness identification testimony." (*Lemcke, supra*, 11 Cal.5th at p. ___.) Like the arguments Medina makes here, the defendant's "claim [in *Lemcke* was] based on empirical research showing that confidence in an identification is generally not a reliable indicator of accuracy." (*Ibid.*)

Dr. Mitchell Eisen, the expert witness here, was also the expert in *Lemcke*. (*Lemcke, supra*, 11 Cal.5th at p. ___.) The testimony he gave in the *Lemcke* matter was in lockstep with the testimony he gave in Medina's case. (*Ibid.*)

The *Lemcke* court explained that in reviewing instructional error for a due process violation, that the instruction " ' " 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." ' " (*Lemcke, supra*, 11 Cal.5th at p. ___.)

In *Lemcke*, as here, the defendant argued that CALCRIM No. 315's "instruction on witness certainty . . . operates to 'lower the prosecution's burden of proof.' " (*Lemcke, supra*, 11 Cal.5th at p. ___.) The Supreme Court rejected that contention generally and in the context of the record on appeal.

"As [*People v. Sánchez* (2016) 63 Cal.4th 411] explained with respect to CALJIC No. 2.92's similarly worded instruction, the instruction does not direct the jury that 'certainty equals accuracy.' [Citation.] Nor does the instruction state that the jury must presume an identification is accurate if the eyewitness has expressed certainty. [Citation.] Instead, the instruction merely lists the witness's level of certainty at the time of identification as one of 15 different factors that the jury should consider when evaluating the credibility and accuracy of eyewitness testimony.

7

The instruction leaves the jury to decide whether the witness expressed a credible claim of certainty and what weight, if any, should be placed on that certainty in relation to the numerous other factors listed in CALCRIM No. 315." (*Lemcke*, *supra*, 11 Cal.5th at p. ___.)

The Supreme Court noted that there, as here, the defendant was "permitted to present expert witness testimony to combat [an] inference" that "certainty is generally correlative of accuracy." (*Lemcke*, *supra*, 11 Cal.5th at p. ___.) The Court continued: "Nothing in CALCRIM No. 315 suggested that the jury should ignore Eisen's expert opinion on witness certainty. To the contrary, the jury received a separate instruction on expert testimony (CALCRIM No. 332 [also given here]) directing that it '*must* consider th[ose] opinions.' . . . The jury also received a general instruction[—CALCRIM No. 226, which was also given here—]on witness testimony explaining that '[p]eople sometimes honestly . . . make mistakes about what they remember' and that the jurors were responsible for 'judg[ing] the credibility or believability of the witnesses.' The jury 'thus remained free to exercise its collective judgment to reject what it did not find trustworthy or plausible.' " (*Id.* at p. ___.)

Medina has not presented any argument that would warrant a departure from *Lemcke*. As did the Supreme Court, when we consider CALCRIM No. 315 " ' "in the context of the instructions as a whole and the trial record[,]" ' we conclude that listing the witness's level of certainty as one of 15 factors the jury should consider when evaluating an eyewitness identification did not render [Medina's] trial fundamentally unfair or otherwise amount to a due process violation."

**DISPOSITION**

The trial court's judgment is affirmed.

NOT TO BE PUBLISHED


CHANEY, J.

We concur:


ROTHSCHILD, P. J.


BENDIX, J.